**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

<u>CIVIL MINUTES -- GENERAL</u>

| | |
|---|---|
| Case No.   **CV 17-8711-JFW(RAOx)** | Date: October 9, 2018 |
| Title:   Kristina Chiteishvili -v- Vertifx LLC, et al. | |

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Shannon Reilly | None Present |
| **Courtroom Deputy** | **Court Reporter** |

| | |
|---|---|
| **ATTORNEYS PRESENT FOR PLAINTIFFS:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
| None | None |

PROCEEDINGS (IN CHAMBERS):    ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY [filed 9/3/18; Docket No. 116]

On September 3, 2018, Plaintiff Kristina Chiteishvili ("Plaintiff") filed a Motion for Summary Judgment on the Issue of Liability ("Motion"). On September 9, 2018, Defendants Vertifx LLC, Vertifx Limited, Eduard Akopian ("Akopian"), Kevin Kachaturian ("Kachaturian"), Anaida Ovsepyan ("Anaida"), and Gayane Ovsepyan ("Gayane") (collectively, "Defendants") filed their Opposition. On September 17, 2018, Plaintiff filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's October 1, 2018 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.    Factual and Procedural Background**

**A.    Factual Background**

**1.    Plaintiff Invests $1,000,000.00 in the "Vertiforex" Fund.**

On approximately March 15, 2016, Plaintiff, who was residing in Moscow, called Akopian via Skype based on a recommendation from a friend in Moscow to inquire about locating a professional money manager in Los Angeles. Plaintiff explained that she needed a steady return on a $700,000.00 investment in order to satisfy some prior obligations. Akopian represented himself as a "seasoned banker" and a "licensed money manager" and advised Plaintiff that he fully understood her needs and would help her find the right person to manage her investment. On April 4, 2016, after approximately fifteen conferences via Skype, Akopian advised Plaintiff that he

managed an investment fund called "Vertiforex," which had offices in Canada and the United Kingdom, and that he was the managing director of a global money-management conglomerate, Anderson Capital Group LLC, which owned Vertiforex. Akopian advised Plaintiff that if she invested a minimum of $1,000,000.00 in Vertiforex, she would receive a guaranteed annual return of sixty percent which would be paid to Plaintiff at the rate of $50,000.00 per month for one year and the $1,000,000.00 principal would be returned at the end of the one year management cycle. Although Plaintiff stated that she did not have that much cash available, Akopian insisted that $1,000,000.00 was the minimum investment. In her declaration in support of her Motion, Plaintiff states that Akopian represented that "I would purchase a depositor's investment contract, a security, and that Vertiforex will **not** use my million to trade currency, but rather will use my funds to get a 'margin,' or borrow funds, from the broker Divisa Capital for currency trading. In other words, Vertiforex would trade currency with funds borrowed from the broker based on my deposit. Akopian insisted that my million would be 'untouched' and not used for trading, because with my funds Vertiforex will be able to obtain borrowed funds for currency trading from Divisa Capital, thereby my monies would not be placed at risk, and yet have a guaranteed high return based on Akopian previous successes with these types of transactions." Declaration of Kristina Chiteishvili, ¶ 4.

On April 19, 2016, while Plaintiff was in Moscow, Akopian electronically transmitted a signed copy of a document entitled "Vertiforex Asset Management Agreement" (the "Vertiforex Agreement"). The signature block for Vertiforex contained a round star-shaped seal, which read "VERTIFX LLC California DEC 17 2014 Limited Liability Company."[1] In the Vertiforex Agreement, Plaintiff was referred to as a "depositor" and there was no language authorizing Plaintiff's funds to be used for currency or any other trading. The Vertiforex Agreement also provided for a "guaranteed earning of Five Point Zero Percent (5.0%) per month for One (1) year on the amount deposited by the Depositor [Plaintiff]; for a yearly total of Sixty Point Zero Percent (60.0%) for the one year cycle (1) of Management." The Vertiforex Agreement also indicated that "Vertiforex [is] a fully licensed brokerage firm, existing and registered under the laws of New Zealand, and the United Kingdom." The Vertiforex Agreement referred to Akopian as "Edward Hakobyan," "licensed Asset Manager," and "President and CEO" of Vertiforex.[2] Akopian advised Plaintiff that although she would be unable to manage her funds, she would be able to monitor her funds in a special sub-account #1280007 that would be created for her.

After receiving the draft of the Vertiforex Agreement, Plaintiff arranged to travel to the United States to meet Akopian in person. On May 12, 2016, Plaintiff arrived in Los Angeles and Akopian met her at the airport. While driving Plaintiff to her hotel, Akopian invited Plaintiff to have dinner at his residence, located at 4967 Bilmoor Avenue, Tarzana, California (the "Tarzana Property"), where he lived with his wife, Gayane, and his two adult sons, Roy and Roger Akopian. After

---

[1] In 2016, Kachaturian was listed as the sole manager of Vertifx LLC, a California limited liability company. In addition, between 2012 and 2016, Kachaturian was the sole owner of the internet domains "vertiforex.com" and "vertiforex.co.uk."

[2] The different spelling of Akopian's name in the Vertiforex Agreement did not cause Plaintiff to be suspicious because both names are pronounced the same in Russian, her native language and the language she used to communicate with Akopian.

dinner, Plaintiff and Akopian discussed the Vertiforex Agreement in the presence of Gayane. Akopian again represented that Plaintiff's investment would not be traded but used as leverage to obtain margin or borrow funds from Divisa Capital and the borrowed funds would be used for trading.  During this discussion, Akopian advised he would personally guarantee Vertiforex's performance and produced a "Personal Guarantee" that was backdated to April 19, 2016, the same date that appeared on the initial draft of the Vertiforex Agreement provided to Plaintiff. Akopian then signed the Personal Guarantee using the name Edward Hakobyan.  Plaintiff and Akopian both signed the Vertiforex Agreement and backdated it to April 19, 2016, which Akopian said was necessary.  Akopian also gave Plaintiff wiring instructions and requested a cash down payment of $20,000.00 to be made in a few days.  The wiring instruction displayed the "Vertiforex" logo and listed Vertifx LLC as the recipient.

At Akopian's invitation, Plaintiff stayed with Akopian and his family at the Tarzana Property from May 13, 2016 to May 23, 2016.  During her stay, Akopian and Gayane convinced Plaintiff that she should invest $1,000,000.00 into the Vertiforex fund by exploiting Plaintiff's trust, familial values, immigrant status, and ethnic background.  For example, Akopian's sons called Plaintiff "sister" and Akopian and Gayane called Plaintiff "daughter" and they engaged Plaintiff in daily family activities, including attending church, cooking, and hosting gatherings of family and friends. During this same time period, Akopian and Gayane repeatedly told Plaintiff that Akopian was a licensed money manager; that he worked for Anderson Capital Group, LLC, which had offices in the United Kingdom, the United States, New Zealand, and Armenia; that Akopian was a trustworthy professional; and that both Akopian and Plaintiff would profit greatly if she trusted him with her investments.[3]  On May 17, 2016, Plaintiff gave Akopian the requested cash down payment of $20,000.00.  Akopian gave Plaintiff a "deposit" receipt, which was signed by Edward Hakobyan" as "President" of Vertiforex.  The deposit receipt displayed the "Vertiforex" logo.  Plaintiff asked Akopian how she would be able to monitor her $1,000,000.00 investment.  In response, Akopian advised Plaintiff that she would be able to view or monitor her investment in her special sub-account #1280007, but not trade or move the funds, through the "MetaTrader 4" application. Akopian then installed the "MetaTrader 4" software on Plaintiff's laptop.

Although Plaintiff returned to Moscow on May 23, 2016, Akopian remained in daily contact with Plaintiff and attempted to convince her to sell her business so that she could invest additional money with him.  On May 31, 2016, Plaintiff wired $980,000.00 in accordance with the wiring instructions provided by Akopian to an account at Barclays Bank in London, which purportedly belonged to Vertifx LLC.[4]

---

[3] In fact, Eduard Akopian, Edward Hakobyan, Vertifx LLC, Vertifx Limited and Vertiforex are not registered with the Financial Industry Regulatory Authority, Inc., the United Kingdom Financial Conduct Authority, or the New Zealand Financial Markets Authority.

[4] In fact, the account belonged to Vertifx Limited.  Although Kachaturian was initially the only authorized signatory on the Vertifx Limited account, Akopian was subsequently added as an authorized signatory.  Kachaturian and Akopian are co-owners of Vertifx Limited, which has three officers of record: Edward Hakobyan, Kachaturian, and Kachaturian's wife, Ofelia Nana Kachaturian.

### 2. Plaintiff is Defrauded Out of Her $1,000,000.00 Investment.

At all times after Plaintiff made her $1,000,000.00 investment, Plaintiff's sub-account #1280007 never reflected a balance of less than $1,000,000.00.[5] As a result, Plaintiff believed that her investment was safe and secure and was being handled consistent with Akopian's representations that it would not be used for actual trading but only to enable Vertiforex to engage in margin trading in foreign currency with Divisa Capital. Plaintiff never knew that Kachaturian had manipulated her sub-account #1280007 so it continuously showed that she had a balance of $1,000,000.00 in her sub-account at Divisa Capital. In fact, $400,000.00 of Plaintiff's investment was deposited in a brokerage account at Divisa Capital owned by Vertifx.com LLC. By September 22, 2016, Plaintiff's entire $400,000.00 had been lost as a result of losing currency trading transactions even though Akopian had represented Plaintiff's funds would not be used for trading currency. Plaintiff's evidence demonstrates that Akopian and Kachaturian spent the remaining $600,000.00 of Plaintiff's investment on personal expenses, including cars, casinos, spas, cash, mortgage, and luxury goods. In addition, Plaintiff has demonstrated through undisputed evidence that Akopian laundered Plaintiff's funds through various accounts in the name of Vertifx LLC at First Bank, N.A., Bank of America N.A., and JPMorgan Chase Bank, N.A., over which Kachaturian and Akopian had sole control.

In an effort to conceal Defendants' fraudulent scheme, Akopian deposited $50,000.00 into Plaintiff's account at First Bank, N.A. on July 5, 2016 and advised Plaintiff that it represented her "return on investment" for the month of June 2016. The deposit was made by a check that had been hand-written by Akopian on one of Vertifx LLC's accounts at First Bank, N.A.[6] On that same day, Akopian convinced Plaintiff to roll over the accumulated interest she had allegedly earned for use in an additional investment to be paid on December 1, 2016. During this entire time, Akopian continued his efforts to persuade Plaintiff to sell her business and invest the sale proceeds in Akopian's fund. When Plaintiff told Akopian that she would not make any additional investments with him, Akopian barred her from the Tarzana Property and family events and made multiple unfulfilled promises that he would return Plaintiff's entire investment.

When Akopian refused to return Plaintiff's investment, Plaintiff filed an action entitled *Krinstina Chiteishvili v. Edward Hakobyan* in Los Angeles Superior Court, Case No. BC 658805 (the "State Court Action"), on April 20, 2017.[7] On May 23, 2017, Akopian was served with the Complaint in the State Court Action. On May 24, 2017, Vertifx LLC, acting through Kachaturian,

---

[5] Although Plaintiff was able to view what she believe to be her sub-account balance online, she never received any updated or periodic statements from any of the Defendants regarding her sub-account.

[6] On May 11, 2016, Akopian opened an account at First Bank, N.A. in the name of Vertifx LLC, with Akopian the sole signatory on the account. On May 27, 2016, Akopian opened another account at First Bank, N.A. in the name of Vertifx LLC, with Akopian the sole signatory on the account.

[7] The State Court Action was subsequently dismissed.

signed a deed "gifting" the Tarzana Property to Akopian's sister-in-law, Anaida.[8]

### B.    Procedural History

On January 12, 2018, Plaintiff filed a First Amended Complaint against Defendants, alleging claims for: (1) intentional misrepresentation against Vertifx LLC, Akopian, Gayane, and Vertifx Limited; (2) violation of the Uniform Voidable Transactions Act against Vertifx LLC, Anaida, and Vertifx Limited; (3) Violation of the Consumers Legal Remedies Act against Vertifx LLC, Akopian, and Vertifx Limited; (4) violation of Sections 10(b) and 20(a) of the Securities and Exchange Act, and 17 C.F.R. § 240.10b-5 against Vertifx LLC, Vertifx Limited, Akopian, and Kachaturian; and (5) conversion against Vertifx LLC and Akopian.[9]  In the First Amended Complaint, Plaintiff alleges that "Defendants swindled Plaintiff of $1,000,000.00 and thereby have caused Plaintiff grave economic injury and hardship.  Defendants engaged in an investment scam that exploited Plaintiff's trust and confidence, an investment scam that preyed on a common affinity between Akopian, Gayane Ovsepyan, and Plaintiff."  First Amended Complaint ("FAC"), ¶ 1.

## II.   Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Once the moving party meets its burden, a party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but must set out specific facts showing a genuine issue for trial.  *Id.* at 250; Fed. R. Civ. P. 56(c), (e); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data.").  In particular, when the non-moving party bears the burden of proving an element essential to its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "An issue of fact is not enough to defeat summary judgment; there must be a genuine issue of material fact, a dispute capable of affecting the outcome of the case."  *American International Group, Inc. v. American International Bank*, 926 F.2d 829, 833 (9th Cir. 1991) (Kozinski, dissenting).

An issue is genuine if evidence is produced that would allow a rational trier of fact to reach a verdict in favor of the non-moving party.  *Anderson*, 477 U.S. at 248.  "This requires evidence, not

---

[8]  Although Vertifx LLC purchased the Tarzana Property in October 2015, Akopian has been residing in the Tarzana Property since approximately 2008.  On May 24, 2017, Vertifx, LLC transferred the Tarzana Property to Anaida.  In March 2018, Anaida transferred the Tarzana Property to FPB West Holdings, Inc. ("FPB"), a Nevada company.  However, despite the transfer to FPB, Akopian continues to reside in the Tarzana Property pursuant to a lease agreement that grants Akopian the option to purchase the Tarzana Property by the end of 2018.

[9]  Divisa US LLC was named as a defendant in Plaintiff's original Complaint, but was not named in the First Amended Complaint.

speculation." *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1225 (9th Cir. 1999). The Court must assume the truth of direct evidence set forth by the opposing party. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992). However, where circumstantial evidence is presented, the Court may consider the plausibility and reasonableness of inferences arising therefrom. *See Anderson*, 477 U.S. at 249-50; *TW Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631-32 (9th Cir. 1987). Although the party opposing summary judgment is entitled to the benefit of all reasonable inferences, "inferences cannot be drawn from thin air; they must be based on evidence which, if believed, would be sufficient to support a judgment for the nonmoving party." *American International Group*, 926 F.2d at 836-37. In that regard, "a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

### III.   Discussion

In her Motion, Plaintiff seeks summary judgment on the issue of liability on each claim alleged against Defendants in the First Amended Complaint.

#### A.   Defendants Have Failed to Comply With the Requirements for Opposing a Motion for Summary Judgment.

The Court acknowledges that summary judgment cannot be granted solely on the ground that the opposing party failed to file all the required opposition papers. *See Cusano v. Klein*, 264 F.3d 936, 950 (9th Cir. 2001). Rather, summary judgment is only proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson*, 477 U.S. at 256. A party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but must set out specific facts showing a genuine issue for trial. *Id.* at 250; Fed. R. Civ. P. 56(c), (e).

In this case, in contravention of Local Rule 56-2, Defendants have failed to file a "document containing a concise 'Statement of Genuine Disputes' setting forth all material facts as to which it is contended there exits a genuine dispute necessary to be litigated." Local Rule 56-2. Although Defendants filed a document entitled "Statement of Genuine Issues" in opposition to Plaintiff's Motion, it does not set forth specific facts that they dispute and, therefore, violates Local Rule 56-2. Defendants' Statement of Genuine Issues also fails to comply with paragraph 4(a) of the Court's February 26, 2018 Scheduling and Case Management Order ("CMO"). Specifically, Defendants have failed to provide any evidence disputing Plaintiff's version of the facts or any evidence that might arguably support their version of the facts.

Local Rule 56-3 allows the Court to conclude that "the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." Local Rule 56-3. Given Defendants' failure to file the required Statement of Genuine Issues or produce any admissible evidence in opposition to Plaintiff's Motion, the Court may deem all of Plaintiff's undisputed facts as uncontroverted as long as they are supported by admissible evidence. *See*

Local Rule 56-3; *see also Moreno v. Baca*, 2002 WL 434596, at *4 (C.D. Cal. Mar. 18, 2002) (granting summary judgment and noting that "Plaintiff has not filed a document containing a 'Statement of Issues' setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, as required by Local Rule 56-2. Therefore, as directed by Local Rule 56-3, the Court assumes that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy").

Moreover, although Defendants filed a document entitled "Opposition," Defendants fail to include **even a single citation** to any legal authority or any admissible evidence in support of their arguments. Furthermore, Defendants failed to file a proposed Statement of Decision as required by paragraph 4(e) of the CMO. Paragraph 4(e) clearly states that "[f]ailure to lodge the Proposed Statement of Decision will result in the denial or granting of the motion," and, thus, Defendants' failure to file a proposed Statement of Decision also justifies the granting of Plaintiff's Motion.

### B. Plaintiff Is Entitled to Summary Judgment On All of Her Claims.

Although Defendants failed to submit any evidence demonstrating a genuine issue for trial or any legal authority demonstrating why, even based on the undisputed evidence presented by Plaintiff, a reasonable jury could return a verdict in their favor, the Court nonetheless has engaged in a thorough examination of the facts and law and concludes that Plaintiff is entitled to summary judgment on all of her claims .

#### 1. Intentional Misrepresentation

To succeed on an intentional misrepresentation claim, a plaintiff must demonstrate that the defendant made a false representation or omission, with knowledge of falsity and intent to defraud, that plaintiff justifiably relied on such representations, and that she suffered damages as a result. *Okun v. Morton*, 203 Cal. App. 3d 805, 828 (1988). In this case, the undisputed evidence demonstrates that Akopian and Gayane made a series of misrepresentations in order to fraudulently induce Plaintiff to make a $1,000,000.00 investment with Defendants.[10] For example, Akopian falsely represented that Plaintiff's investment would be used as collateral and would not be used for currency trading or any other type of trading and that her entire investment of $1,000,000.00 would not be at risk and would be returned to her at the end of one year. In addition, despite Akopian's representations to the contrary, neither "Vertiforex" nor "Vertiforex LLC" existed as a legal entity. Moreover, contrary to his representations, Akopian has never been a "licensed Asset Manager," a FINRA-registered broker or money manager, licensed by the United Kingdom Financial Conduct Authority, or licensed asset manager by any regulatory authority of New Zealand.

Accordingly, the Court concludes that Plaintiff is entitled to summary judgment on her intentional misrepresentation claim against Vertifx LLC, Akopian, Gayane, and Vertifx Limited.

---

[10] Gayane was aware of and confirmed many of the misrepresentations made by Akopian. In addition, Gayane separately made misrepresentations to Plaintiff. The Court concludes that Vertifx LLC and Vertifx Limited are each liable for Akopian's fraud based on agency and alter ego theories.

### 2. Violation of the Uniform Voidable Transaction Act

Pursuant to Uniform Voidable Transactions Act ("UVTA"), transfers by, or obligations of, a debtor are voidable as a matter of law if the transfers were executed with the "actual intent to hinder, delay, or defraud" any creditor. Cal. Civ. Code § 3439.04(a)(1). The requisite intent can be inferred from the totality of the circumstances. *See Filip v. Bucurenciu*, 129 Cal. App. 4th 825, 834 (2005); *Maguire v. Corbett*, 119 Cal. App. 2d 244, 249 (1953). In this case, the fraudulent manner in which Vertifx Limited, through Akopian, acquired Plaintiff's $1,000,000.00, and the fraudulent manner in which Vertifx LLC accomplished the "gifting" of the Tarzana Property to Anaida clearly violated the UVTA. Akopian's wiring instructions specifically stated that Vertifx LLC would be the recipient of Plaintiff's funds, but, in fact, the funds were deposited into the account of Vertifx Limited without the knowledge or consent of Plaintiff. After fraudulently obtaining Plaintiff's funds, Vertifx Limited transferred those funds to various accounts owned by Vertifx LLC and other unknown entities. In addition, Vertifx LLC's May 2017 transfer of the Tarzana Property to Anaida, Akopian's sister-in-law one day after Akopian was served in Plaintiff's State Court Action was a transfer to an insider intentionally designed to frustrate any attempt by Plaintiff to enforce any judgment she would receive in the State Court Action. Similarly, the transfer of the Tarzana Property in March 2018 from Anaida to FPB during the pendency of this action was designed to avoid any attempt by Plaintiff to enforce any potential judgment she may receive in this action.

Accordingly, the Court concludes that Plaintiff is entitled to summary judgment on her UVTA claim against Vertifx LLC, Anaida, and Vertifx Limited.

### 3. Violation of the Consumer Legal Remedies Act

Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. Specifically, CLRA prohibits "[m]isrepresenting the source, sponsorship, approval, or certification of goods or services." Cal. Civ. Code § 1770(a)(2). The CLRA also prohibits "[a]dvertising goods or services with intent not to sell them as advertised." Cal. Civ. Code § 1770(a)(9). Courts have generally applied this subsection to situations where a consumer has been "baited" into purchasing an item that turns out to be different than was advertised. *See Lengen v. General Mills, Inc.*, 2016 WL 2602416, at *6 (E.D. Cal. May 5, 2016); *Kelly v. BP West Coast Prods. LLC*, 2014 WL 7409220, at*6 (E.D. Cal. Dec. 30, 2014). In this case, Plaintiff's undisputed evidence demonstrates that she was clearly "baited" with promises of high returns on and the safety of her investment, but neither Akopian nor Vertifx LLC ever intended to manage or return her investment in accordance with their representations. Instead, immediately after Plaintiff made her investment, her funds were misappropriated by Defendants. Plaintiff's funds were transferred to various Vertifx LLC's accounts controlled by Akopian and Kachaturian, and lost in unauthorized currency trading and used to pay the personal expenses of Akopian and Kachaturian.

Accordingly, the Court concludes that Plaintiff is entitled to summary judgment on her CLRA claim against Vertifx LLC, Akopian, and Vertifx Limited.

### 4. Violation of Section 10(b) and Section 20(a) of the Securities and Exchange Act and Rule 10b-5

### a. Section 10(b)

Section 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act") makes it "unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails" to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j(b). To state a viable claim for Rule 10b–5 violation, a plaintiff has to demonstrate the following elements: "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005). The element of scienter refers to "a mental state embracing intent to deceive, manipulate, or defraud." *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 742 (9th Cir. 2008) (*citing Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n. 12 (1976)). Reckless conduct has been held to satisfy the scienter requirement. *See Glazer Capital Mgmt*, 549 F.3d at 743; *In re Daou Sys., Inc.*, 411 F.3d at 1015.

As detailed above, Akopian fraudulently induced Plaintiff to enter into the Vertiforex Agreement by making numerous material misrepresentation to Plaintiff that he knew to be false and which he made for the purpose of defrauding Plaintiff.[11] In addition, the undisputed evidence demonstrates that as part of their fraudulent scheme, Akopian and Gayane exploited Plaintiff's trust, familial values, immigrant status, and ethnic background with the clear intention of inducing Plaintiff to make an investment of $1,000,000.00 which was misappropriated and ultimately used for the personal benefit of Defendants.

### b. Section 20(a)

Section 20(a) of the Exchange Act provides, in part, that "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable . . to the same extent as such controlled person to any person to whom such controlled person is liable, . . . unless the controlling person acted in good faith and did not directly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a). To establish control person liability, a plaintiff is required to demonstrate: (1) there is a primary violation, and (2) the defendant directly or indirectly controls any person liable for the violation. *S.E.C. v. Todd*, 642 F.3d 1207, 1223 (9th Cir. 2011). The term control "means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. §

---

[11] The Court concludes that the Vertiforex Agreement is an "investment contract" and, thus, qualifies as a security pursuant to Section 3(a)(10) of the Exchange Act. Pursuant to the Vertiforex Agreement, Plaintiff invested $1,000,000.00 in a common enterprise as represented by Akopian, with the expectation of profits derived solely from the efforts of the promoter, Akopian, who represented himself to be a "licensed money manager." Akopian also represented to Plaintiff that her investment would be a part of a fund and Plaintiff had no input or control over her $1,000,000.00 once it was invested, and, thus, Plaintiff was solely reliant upon the efforts of Akopian.

230.405. Once these elements are established, the burden shifts to the defendant to demonstrate that he acted in good faith and did not directly or indirectly induce the violations. *See Todd*, 642 F.3d at 1223. Section 20(a) does not require scienter and/or fraud as prerequisites for finding a control person's liability. *Batwin v. Occam Networks, Inc.*, 2008 WL 2676364, at *24 n.17 (C.D. Cal. July 1, 2008). Instead, a person or entity may be liable under section 20(a) on the principles of agency or respondeat superior. *See Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1577 (9th Cir. 1990).

In this case, Plaintiff has met her burden of establishing that each of the Defendants named in this claim – Vertifx LLC, Vertifx Limited, Akopian, and Kachaturian – exercised control over the activities of each other or had the ability to exercise such control given the common ownership of the various entities and bank accounts used to perpetuate the fraudulent scheme against Plaintiff. *See, e.g., Kersh v. General Council of Assemblies of God*, 804 F.2d 546, 548 (9th Cir. 1986) (holding that a plaintiff can establish a prima facie case that a defendant was a "controlling person" by demonstrating that "he was a 'culpable participant' in the alleged illegal activity"); *see also In re Allstate Life Ins. Co. Litigation*, 2013 WL 789106 (D. Ariz. Mar. 1, 2013) ("In *Kersh*, the issue was whether a controlling person's failure to supervise could constitute 'culpable participation,' an element of the control liability that has since been eliminated from the Section 20(a) analysis . . . However, in eliminating the culpable participation requirement from the prima facie case, the Ninth Circuit merely shifted the burden, requiring the defendant to prove lack of culpable participation as a part of establishing the good faith defense") (internal citations omitted); *In re Juniper Networks, Inc. Securities Litigation*, 542 F.Supp. 2d 1037 (N.D. Cal. 2008) (holding that even though a plaintiff no longer need to demonstrate culpable conduct to prove Section 20 liability, plaintiffs had sufficiently alleged control person liability when the allegations "state that Defendants had the power to influence or control the primary violators and actively used this influence or control so as to be a culpable participant in the primary violation"). Defendants have not offered any evidence that would demonstrate that they acted in good faith or lacked the ability to exercise control over each other. *Todd*, 642 F.3d at 1224 (holding that mere assertions of good faith are insufficient to establish good faith as a defense to control person liability).

Accordingly, the Court concludes that Plaintiff is entitled to summary judgment on her violation of Section 10(b) and Section 20(a) of the Exchange Act and Rule 10b-5 claim against Vertifx LLC, Vertifx Limited, Akopian, and Kachaturian.

### 5. Conversion

"The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." *Farmers Ins. Exch. v. Zerin*, 53 Cal. App.4th 445, 451 (1997). "Money can be the subject of an action for conversion if a specific sum capable of identification is involved." *Id.* at 452. In this case, the evidence is overwhelming that Akopian obtained Plaintiff's $1,000,000.00 as a result of a blatant fraud, including misrepresentations that Plaintiff's investment would be safe, not used for currency trading, and would be returned to her in one year. However, despite Plaintiff's numerous efforts, it is obvious that Defendants have no intention of returning

Plaintiff's $1,000,000.00 to her.[12]

Accordingly, the Court concludes that Plaintiff is entitled to summary judgment on her conversion claim against Vertifx LLC and Akopian.

## IV.     Conclusion

For all the foregoing reasons, Plaintiff's Motion is **GRANTED**.

IT IS SO ORDERED.

---

[12] The Court concludes that Vertifx LLC is liable for Akopian's misconduct under agency and alter ego theories.